---

## *In re* FINK.

1. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—PURPOSE OF STATUTE.

> The purpose of the act providing for the treatment of criminal sexual psychopathic persons is to protect the public against persons who, while not insane or feeble-minded, present a serious problem (CL 1948, § 780.501 *et seq.*).

2. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—TREATMENT.

> The statutory care and treatment to be accorded criminal sexual psychopathic persons rests upon theory they are not criminals in the ordinary sense of the term nor to be subjected to punishment as such for acts resulting from the psychopathic condition or mental disorder (CL 1948, § 780.501 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 28 Am Jur, Insane and Other Incompetent Persons § 29 Supplement.
[1-4] Statutes relating to sexual psychopaths. 24 ALR2d 350.

3. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSON—CON-
CLUSION—STATEMENT OF FACTS—ARSON.
    Petition for commitment as a criminal sexual psychopathic person
    filed by prosecuting attorney after charge of arson had been
    filed against accused *held*, fatally defective, where it alleged
    accused was a criminal sexual psychopathic person as defined
    by statute but failed to set forth facts tending to show that
    such conclusion is correct or manifested by the crime of arson
    (CL 1948, § 780.503).

4. HABEAS CORPUS—CRIMINAL SEXUAL PSYCHOPATHIC PERSON—DIS-
CHARGE—PREJUDICE—TREATMENT.
    Order committing person accused of arson as a criminal sexual
    psychopathic person, based on a petition that was fatally de-
    fective in that it failed to contain a factual showing which, if
    proven correct, would result in commitment of defendant as a
    criminal sexual psychopath is set aside on habeas corpus and
    accused discharged without prejudice to further proceedings as
    circumstances may require; it appearing that accused while
    thus far confined has not had the treatment intended or re-
    quired by statute (CL 1948, §§ 780.503, 780.507).

Habeas corpus by Everett L. Fink, with accom-
panying certiorari to Hillsdale circuit court, to ob-
tain release from commitment as a criminal sexual
psychopathic person after his arrest on charge of
arson. Submitted September 4, 1953. (Calendar
No. 45,914.) Discharged October 5, 1953.

*Everett L. Fink,* in propria persona.

*Frank G. Millard,* Attorney General, and *William
MacRitchie,* Prosecuting Attorney, for the people.

BUTZEL, J. Upon the showing made in the peti-
tion of Everett L. Fink, we deemed it proper to is-
sue a writ of habeas corpus directed to the medical
superintendent of the Ionia State hospital, and an
ancillary writ of certiorari to the Hillsdale county
circuit court. Returns were duly made. In 1949,
petitioner was charged with the crime of arson in
the Hillsdale county circuit court. Petitioner was
a veteran with an honorable discharge and had a

good reputation. Upon complaint a warrant was issued, and on arraignment before a justice of the peace petitioner waived examination. He was thereafter brought before the circuit court, where the following took place:

"*The Court:* I guess I know you as Jack.

"*E. L. Fink:* That is right.

"*The Court:* That is what I thought. Mr. Ellis (the prosecuting attorney) has been discussing with me the situation that you find yourself in. You are actually charged with arson but there are some extenuating circumstances here in your case that I think the court ought to look into and I hope you will be patient with me and we will see if we can work out something. I believe to put you in jail or send you to prison might not be the solution of your problem. I am familiar with them and I have made some study of those cases and I believe you ought to have some help and some treatment and so forth and so on and Mr. Ellis is filing a petition asking that the court make some investigation into it and appoint a couple of psychiatrists and we have some further discussion from that angle rather than bring you in on a criminal charge and have you plead guilty or not guilty or to send you to prison or something like that.

"That is not the answer to your problem at all. And I know you and know your family and know your wife. You folks are in a bad situation and probably something you are not 100% to blame for; but I wanted you to come over so that I could talk with you so that you know I wasn't holding you in jail, something like that. I am not trying to punish you. If you will be patient with us we will have a couple of doctors drop in and see you. I wish you would cooperate with them and talk your troubles over with them, go into the facts and answer all questions and we will see if we can work out something. Is that all right with you?

"*E. L. Fink:* Yes.

"*The Court:* Do you feel that is a better solution than put you through a trial and perhaps have to go to prison?

*"E. L. Fink:* Yes.
*"The Court:* You know what I am talking about?
*"E. L. Fink:* Yes."

On the same day the prosecuting attorney, proceeding under PA 1939, No 165, as amended by PA 1947, No 242 (CL 1948, § 780.501 *et seq.* [Stat Ann 1949 Cum Supp § 28.967(1) *et seq.*]), filed a petition in which he set forth the charge of arson as theretofore made and in an additional paragraph he informed the court that he believed petitioner (Fink) was a sexual psychopathic person, suffering from a mental disorder coupled with criminal propensities to the commission of sex offenses, but not insane or feeble-minded, and that said disorder had existed for a period of not less than 1 year. The court appointed 2 psychiatrists, who examined petitioner at the Ypsilanti State hospital and filed their written reports with the court. Both psychiatrists concluded that petitioner was a criminal sexual psychopath with criminal propensities present for more than 1 year, that he was not feeble-minded nor psychotic, and recommended that he be placed in an appropriate mental institution for treatment as a criminal sexual psychopath. The sexual deviation with which petitioner suffers manifests itself in an urge to set fires, from which he derives sexual satisfaction. He admitted to the psychiatrists that at times he felt a compulsion to set fires; that he preferred the sexual gratification that came to him in the presence of fires to any normal sexual relations; and that the compulsion to set such fires was beyond his control. Petitioner was not informed of the full contents of the psychiatrists' reports, the judge holding that they were confidential. Petitioner was adjudged a criminal sexual psychopathic as defined by the statute, *supra.* In part the hearing consisted of the following:

*"The Court:* You feel that you do need some help to kind of get straightened around?

"*E. L. Fink:* Yes.

"*The Court:* I read this history of your difficulty and your war record and things along that line and both recommendations are the same. I feel under the circumstances it would be unfair to ask you to plead guilty or not guilty to arson because of these other complications, therefore, if you have no objection I am going to find that you are a sexual psychopathic individual with criminal propensities and I am going to commit you to the Michigan hospital commission and ask that they in turn arrange for hospital care and treatment.

"I will get that report out to them right away and just as soon as they can get a bed for you the sheriff's office will be notified and they will take you to the hospital. It probably will be the State hospital at Ionia, that is not the reform school. They are 2 separate institutions. There is the reformatory and they are not the same place, some people think it is but it is not true.

"You probably will be transferred to the Ionia State hospital. You won't like it up there, I don't like any hospital myself I don't like them—it is the best place we have. We have had pretty good luck getting those difficulties straightened out. So I am going to get the word out to them and you be patient. Mr. Pifer, just as soon as you get word they have a bed you take him up. I think you have taken 1 or 2 up for me and you know the procedure just as well as I do. And I don't care to keep Jack in jail at all but there is a certain amount of routine that we have to go through.

"I will ask them to get in touch with you just the minute they are ready and you kind of keep the car greased up so you can take him up there, is that all right with you Jack?

"*E. L. Fink:* Yes.

"*The Court:* That is what we will do. I am not sending you for any length of time it is like going to the hospital to get your appendix out. I don't know how long it will be. I am not going to send you for any time. It is just like going to a doctor for

treatment or the hospital for treatment. We can't tell, you understand that don't you?

"*E. L. Fink:* Yes."

Petitioner was committed to the State hospital commission for confinement and treatment in an appropriate State institution under the jurisdiction of either the State hospital commission or the department of corrections, until he should have fully and permanently recovered from his psychopathy. On March 25, 1949, he was admitted to the Ionia State hospital upon an order from the department of mental health. Thereafter, on November 17, 1949, he was transferred to the State prison of southern Michigan, where he remained until readmitted to the hospital in January of 1951. On April 17, 1951, he was again transferred to the prison, where he was kept until after our writ of habeas corpus had been issued, whereupon he was again readmitted to the hospital for re-evaluation to ascertain whether he had sufficiently improved to warrant parole consideration. He is now under observation for that purpose. The different transfers back and forth were all made upon orders by the department of mental health.

Petitioner claims that when first admitted to the hospital in 1949, he was given no hospital care or treatment, but was simply assigned to work in the institution's laundry. Later he helped as a nurse. However, when he was transferred to the prison he was placed with the general prison population and received no treatment whatsoever, except for 1 very short interview with the prison psychiatrist; that when readmitted to the hospital in 1951, he still received no treatment, but was assigned to work in the kitchen; that when again transferred to the prison he was again assigned a cell the same as any other convict; that during both stays in the prison he was at all times assigned to one of the

general prison population blocks; and that he failed to receive even the annual psychiatric examinations which are required by the statute, PA 1939, No 165, as amended by PA 1947, No 242 (CL 1948, § 780.507 [Stat Ann 1949 Cum Supp § 28.967(7)]). Petitioner's claims as to the treatment which he received are not denied or controverted in any way.

The variance between the treatment described and desired by the circuit judge and that received as claimed by petitioner is so great that comment hardly seems necessary. The purpose of the statute under which petitioner was committed was described in *People* v. *Piasecki,* 333 Mich 122, 142, as follows:

"By the adoption of the act here in question the legislature sought to provide for the protection of the public against persons who, while not insane or feeble-minded, present a serious problem. The method prescribed for the care and treatment of such persons rests on the theory that because of their mental condition they should not be classed as criminals in the ordinary sense of the term, nor subjected to punishment as such for acts resulting from the psychopathic condition or mental disorder. In keeping with such conclusion a method of inquiry, wholly separate and apart from proceedings under the criminal law of the State, was prescribed for determining the situation with reference to the existence of the psychopathy in question on the part of one accused of a criminal act, with further provision for commitment and treatment in a suitable institution of the State until the mental disorder is cured, or alleviated to such an extent as to permit the release of the one so detained without endangering the public safety or welfare."

We see no difference between incarceration in a State prison as punishment for crime and confinement in the same prison as a psychopathic person, if the latter is treated as simply another member of the general prison population. At least the criminal prisoner can look forward to his release upon the

expiration of his term, but the psychopath has no hope of regaining his liberty until cured, a result which may be but little likelihood of attainment unless he receives the care and treatment for which he was committed. A somewhat similar situation was presented in *Re Kemmerer*, 309 Mich 313, and our comments there will bear reiteration:

"Petitioner further alleges that he is confined to Jackson prison and the sole distinction between his status and that of an ordinary convict is that he is called a 'visitor' in accordance with PA 1939, No 165, and that he is kept in a separate cellblock exclusively used for criminal sexual psychopathic persons. He claims that his 'visit' has been prolonged and he is asking to have it curtailed. The record indicates that the petitioner is an unfortunate person and, until cured, is unfit to enter society, and that he should be institutionalized until it is safe for both him and society that he be released. He alleges that he is not receiving proper care although the prison psychiatrist evidently visits him. He is entitled to proper care such as his condition and the good of society demands. If he is not receiving it and is suffering any unusual punishment, he can always present a petition for habeas corpus preferably to the circuit court of Jackson county where proper and full inquiry can be made into the facts. It is not within our province to prescribe the treatment that should be accorded petitioner. It must be borne in mind that he is not being punished, that he is an unfortunate psychopath, and that he is entitled to such treatment as his condition requires."

Of the several reasons which petitioner advances as ground for his release, we shall consider only one, which we deem controlling. Section 3 of the act, as amended by PA 1947, No 242 (CL 1948, § 780.503 [Stat Ann 1949 Cum Supp, § 28.967(3)]), provides:

"When any person is charged with a criminal offense, or has been convicted of or has pleaded guilty to such offense and has been placed on probation, or

has been convicted or pleaded guilty to such offense but has not yet been sentenced, and it shall appear that such person is a criminal sexual psychopathic person, then the prosecuting attorney of such county, or the attorney general, or some one on behalf of the person charged, may file with the clerk of the court in the same proceeding wherein such person stands charged with, or has been convicted of, or has pleaded guilty to such criminal offense, *a statement in writing setting forth facts tending to show that such person is a criminal sexual psychopathic person."* (Emphasis supplied.)

While the petition filed by the prosecuting attorney alleges that petitioner is a criminal sexual psychopathic person as defined by the statute, it fails to set forth facts tending to show that such conclusion is correct or in any way is manifested by the crime of arson. The case is therefore controlled by *People* v. *Artinian,* 320 Mich 441, and *In re Kelmar,* 323 Mich 511, wherein we held that failure to allege such facts renders the petition fatally defective. In *People* v. *Artinian, supra,* we said:

"While the petition filed in the instant case states conclusions as to defendant's condition, it fails to 'contain a factual showing which, if proven to be correct, would result in' commitment of defendant as a criminal sexual psychopath. For reasons stated in the *Kemmerer Case* [*In re Kemmerer* (309 Mich 313)], this petition must be held to be fatally defective and, in consequence, the subsequent proceedings invalid."

The order of commitment is set aside and petitioner discharged from custody but without prejudice to the people's right to bring further proceedings if circumstances so require.

Dethmers, C. J., and Adams, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.